UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
TERESA ALMONTE,

                    Plaintiff,

        - against -

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
21-CV-3091 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Teresa Almonte brings this action under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c), against Defendant Commissioner of Social Security Administration ("SSA"), seeking judicial review of the SSA's denial of her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Before this Court are the parties' cross-motions for judgment on the pleadings. (Dkts. 11, 15.) For the reasons set forth below, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion.

## BACKGROUND

### I.    Factual and Procedural Background

Plaintiff's history of pain in her neck, back, hands, and wrists started in 2010, after she slipped and fell while coming out of an elevator. (Tr.[1] 45.) Initially, Plaintiff and her doctors tried to address her back pain with "conservative measures" such as physical therapy, anti-inflammatories, muscle relaxants, narcotics, and epidural injections. (Tr. 400.) During that period,

---

[1] All references to "Tr." refer to the continuous pagination of the Administrative Transcript (*see* Dkt. 9), and not to the internal pagination of the constituent documents.

Plaintiff was employed at NYU Winthrop Hospital, tasked with cleaning operating rooms and moving patients around the hospital.  (Tr. 90–91.)

Plaintiff underwent carpal tunnel surgery in 2012 (Tr. 28); a spinal surgery in February 2016 (Tr. 88, 93); a follow-up procedure in April 2017 to remove the pedicle screws that were implanted during her surgery in 2016 (Tr. 93, 423–26); and a neck surgery in June 2017 (Tr. 87, 94).  In the months following the neck surgery, Plaintiff reported to her orthopedic surgeon, Dr. Rohit Verma, that after the neck surgery in 2017, the "pain in the left arm [was] resolved," but the pain in her neck persisted, and the pain in her back worsened after she returned to work in July 2017.  (Tr. 467, 470, 473, 476.)  In October 2017, Plaintiff reported that her neck pain symptoms had been resolved, but that her back pain had gotten worse since resuming work post-surgery.  (Tr. 467.)  By April 2018, Plaintiff was diagnosed with degenerative arthritis of her spine.  (Tr. 461–62.)  In October 2018, she again reported worsening back pain, and MRI results showed disc bulges in sections of her neck and mild bilateral foraminal narrowing at these spinal nerves.  (Tr. 74, 455.)

In July 2018, Plaintiff was referred to Dr. John Vlattas for a psychiatric pain medicine consultation, and she informed Dr. Vlattas of ongoing pain of the neck, shoulders, and lower back into the lower limbs, along with pain, weakness, numbness, and tingling in her hands.  (Tr. 554.)  Over the next few months, Dr. Vlattas treated Plaintiff with periodic spinal injections and with prescriptions of Percocet and Flexeril[2] for her pain, which she reported as a 7 and "constant though varie[d]."  (Tr. 543–53.)  In April 2019, Dr. Vlattas diagnosed Plaintiff with cervical derangement, lumbar derangement with failed back surgery syndrome, bilateral carpal tunnel syndrome, left

---

[2] "Flexeril, a brand name of cyclobenzaprine, is a muscle relaxant."  *Agapito v. Colvin*, No. 12-CV-2108 (PAC) (HBP), 2014 WL 774689, at *6 n.9 (S.D.N.Y. Feb. 20, 2014) (internal quotations marks and citations omitted).

elbow lateral epicondylitis,[3] and various chronic pain disorders.  (Tr. 545, 547.)  Dr. Vlattas recommended continued use of medication to treat muscle spasms, and Percocet to treat, in particular, pain in her lower back, which "she was unable to tolerate."  (Tr. 550–51.)

Plaintiff protectively applied for DIB and SSI on December 27, 2018, and February 4, 2019, respectively, alleging disability as of November 16, 2018, due to back injuries and neck surgery.  (Tr. 272, 262.)[4]  Her initial application for DIB and SSI benefits was denied on March 28, 2019.  (Tr. 162–64.)  In conjunction with her application for DIB and SSI benefits, Plaintiff underwent an orthopedic examination by general internist Allen Meisel on March 13, 2019.  (Tr. 536–42.)  Dr. Meisel observed that she had a normal gait, was able to walk on her heels and toes without difficulty, could complete a full squat, used no assistive device, needed no help changing for the exam or getting on and off the exam table, and was able to rise from her chair without difficulty.  (Tr. 538.)  Dr. Meisel found Plaintiff's hand and finger dexterity intact with a 5/5 bilateral grip strength, and that she had no cervical or paracervical pain, spasm, or trigger points.  (Tr. 539.)  Plaintiff told Dr. Meisel that she did "some cooking" and that she could shower and dress herself, but that her children did the cleaning, laundry, and shopping.  (Tr. 538.)  From the examination, Dr. Meisel concluded that Plaintiff had "marked limitations" for heavy lifting and carrying, climbing ladders and scaffolds, and being exposed to unprotected heights, and "mild

---

[3] Lateral epicondylitis, or tennis elbow, is "an inflammation of the tendons that join the forearm muscles outside of the elbow."  *Merriman v. Comm'r of Soc. Sec.*, No. 14-CV-3510 (PGG), 2015 WL 5472934, at *5 n.5 (S.D.N.Y. Sept. 17, 2015).

[4] The ALJ's decision states that Plaintiff filed for DIB and SSI on December 27, 2018, but the documents Plaintiff received at the time of her application records her application date as December 28, 2018.  (*Compare* Tr. 23, 32, *with* Tr. 272.)  The difference is immaterial for the purposes of the parties' cross-motions.

limitations for standing, walking, climbing stairs, bending, and kneeling." (Tr. 540.) Dr. Meisel's report made no assessment of Plaintiff's ability to sit.

Two State Agency medical analysts also reviewed medical records from Drs. Verma, Vlattas, and Meisel, although neither analyst physically examined Plaintiff. (Tr. 120, 143.) In a report dated March 28, 2019, the first analyst, Dr. J. Rosenthal, found that while Plaintiff had one or more medically determinable impairments, her statements about the intensity, persistence, and function-limiting effects of the symptoms could not be substantiated by the objective medical evidence alone, and thus concluded that Plaintiff was "capable of performing light work" with postural and exertional limitations. (Tr. 119, 122–23.) On reconsideration, the second analyst, Dr. K. Ahmed, affirmed the prior assessment in his July 11, 2019 report, but additionally found that Plaintiff was limited in pushing and pulling in both of her lower extremities due to a right ankle condition. (Tr. 153–55.) Both Drs. Rosenthal and Ahmed found that Plaintiff could sit for a total of "[a]bout 6 hours in an 8-hour workday." (Tr. 120, 143.)[5]

In May 2019, Plaintiff requested reconsideration of the SSA's decision, and the reconsideration decision issued on August 1, 2019 affirmed the prior decision that she was not disabled. (Tr. 174–76, 213.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ") and appeared with her attorney Charles Weiser before ALJ Margaret Pecoraro on January 28, 2020. (Tr. 84.)

At the ALJ hearing, Plaintiff recounted her work history at NYU Winthrop Hospital and before that as a housekeeper at a senior citizens' living facility, covering both the period before and after her 2010 injury. (Tr. 90–91.) Plaintiff testified that she stopped working because she

---

[5] The record contains only the first initials for Drs. Rosenthal and Ahmed, not their whole first names.

was in "severe pain" due to her back and had to sit down and rest every ten minutes.  (Tr. 92.)  She noted that she could not sit for long because her legs begin to get numb and that alternating sitting and standing was not an option because she needed to rest and lie down throughout the day.  (Tr. 92–93.)  Plaintiff also testified that a disc in her back might require additional surgery.[6]  (Tr. 93.)  Plaintiff further testified at the hearing that her neck condition was not improved by the 2017 surgery, and that she got severe migraines and was limited in how much she could turn her head.  (Tr. 95–96.)  She testified that her hands "drop constantly" and that she was always in pain and wore a wrist band every night.  (Tr. 95.)  Plaintiff confirmed that Dr. Vlattas had suggested starting her on a spinal cord stimulator, but that she was "scared to get that put inside [her] body."  (Tr. 98.)

Plaintiff testified that she believed she could stand for no more than 12 to 15 minutes before needing to sit down, and could walk a block and half before needing a break.  (Tr. 99.)  At the time of the hearing, Plaintiff lived with her three daughters and did not assist them with household chores.  (Tr. 99–100.)  Plaintiff explained that at times she has "problems bathing" or dressing herself because of the pain in her hand.  (Tr. 100.)  Plaintiff testified that she spent most of her time resting, did not go outside the home except to attend doctors' appointments, and that she relied on rides from a friend or her daughter to get to doctors' offices.  (Tr. 100–101.)  Plaintiff had not been on any vacations in the last 16 to 17 months, but she did go to Ecuador to visit her ailing father.  (Tr. 101.)  During the hearing, the ALJ also heard testimony from vocational expert

---

[6] The hearing transcript references a "Dr. Ramos," who does not appear elsewhere in Plaintiff's record.  (*See* Tr. 93.)  Based on the context, the Court construes this reference to "Dr. Ramos" as a scrivener's error that should refer instead to Dr. Verma, who performed Plaintiff's previous back surgeries.

Linda Stein, who noted that Plaintiff's prior work would be characterized as a medium exertion job. (Tr. 103.)

By decision dated June 1, 2020, the ALJ found that Plaintiff was not disabled within the meaning of the Act from December 27, 2018, the date the SSI application was filed, through the date of the ALJ's decision. (Tr. 23–36.) On June 22, 2020, Plaintiff requested a review of the ALJ's decision. (Tr. 14–17.) On April 21, 2021, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision, making the ALJ's determination the Commissioner's final decision. (Tr. 7–10.) Thereafter, Plaintiff timely[7] commenced this action on June 1, 2021. (Complaint, Dkt. 1.)

## II.  The ALJ's Decision

In evaluating disability claims, the ALJ must adhere to a five-step inquiry. The plaintiff bears the burden of proof at the first four steps of the inquiry; the Commissioner bears the burden at the final step. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citation omitted).[8] First,

---

[7] 42 U.S.C. § 1383(c)(3) provides that "[t]he final determination of the Commissioner of Social Security after a hearing . . . shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title." 42 U.S.C. § 1383(c)(3). According to 42 U.S.C. § 405(g),

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g). "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the [plaintiff] makes a reasonable showing to the contrary." *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)). The SSA's final decision was issued April 21, 2021 (Tr. 7–10), and the Complaint was filed on June 1, 2021 (Complaint, Dkt. 1), less than 60 days after the presumed receipt of the decision, rendering this appeal timely.

[8] Some cases cited below involve DIB regulations, while others involve SSI, but the DIB and SSI regulations are "virtually identical." *Canter v. Saul*, No. 19-CV-157 (KAD), 2020 WL

the ALJ determines whether the plaintiff is currently engaged in "substantial gainful activity."  20 C.F.R. § 416.920(a)(4)(i).  If the answer is yes, the plaintiff is not disabled.  *Id.*  If the answer is no, the ALJ proceeds to the second step to determine whether the plaintiff suffers from a severe impairment.  *Id.*  § 416.920(a)(4)(ii).  An impairment is severe when it "significantly limits [the plaintiff's] physical or mental ability to do basic work activities."  *Id.*  § 416.922(a).  If the plaintiff does not suffer from an impairment or combination of impairments that is severe, then the plaintiff is not disabled.  *Id.*  § 416.920(a)(4)(ii).  But if the plaintiff does suffer from an impairment or combination of impairments that is severe, then the ALJ proceeds to the third step and considers whether it meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings").  *Id.*  § 416.920(a)(4)(iii); *see also id.*  Pt. 404, Subpt. P, App'x 1. If the ALJ determines at step three that the plaintiff has an impairment that meets or equals one of the listed impairments, then the ALJ will find that the plaintiff is disabled under the Act.  *Id.* § 416.920(a)(4)(iii).  On the other hand, if the plaintiff does not have such an impairment, the ALJ must determine the plaintiff's residual functional capacity ("RFC") before continuing to steps four and five.  To determine the plaintiff's RFC, the ALJ must consider the plaintiff's "impairment(s), and any related symptoms, [that] may cause physical and mental limitations that affect what [the plaintiff] can do in a work setting."  *Id.*  § 416.945(a)(1).  The ALJ will then use the RFC finding in step four to determine if the plaintiff can perform past relevant work.  *Id.*  § 416.920(a)(4)(iv). If the answer is yes, the plaintiff is not disabled.  *Id.*  Otherwise, the ALJ will proceed to step five and determine whether the plaintiff, given their RFC, age, education, and work experience, has the capacity to perform other substantial gainful work in the national economy.  *Id.*

---

887451, at *1 n.2 (D. Conn. Feb. 24, 2020).  The DIB regulations are found at 20 C.F.R. § 404.900 *et seq.*, while the parallel SSI regulations are found at 20 C.F.R. § 416.901 *et seq.*

§ 416.920(a)(4)(v). If the answer is yes, the claimant is not disabled; otherwise, the claimant is disabled and is entitled to benefits. *Id.*

Here, at step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 16, 2018, the alleged onset date. (Tr. 25.) At step two, the ALJ determined that Plaintiff had the "following severe impairments: cervical and lumbar disc disease, asthma, carpal tunnel syndrome, obesity, and [] status post left lateral epicondyle debridement." (Tr. 25.) At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the listed impairments in the Listings. (Tr. 26.) The ALJ then determined Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform sedentary work . . . except that she is limited to occasional climbing stairs/ramps, balancing, stooping, kneeling, crouching, crawling; can never climb ladders, scaffolds or ropes; must avoid concentrated exposure to cold, fumes, dust, gases, poor ventilation; can frequently use her hands for fine and gross manipulations; and needs to be able to alternate sitting and standing at will while remaining on task.[9]

(Tr. 26.) At step four, the ALJ concluded that due to her severe impairments, Plaintiff could not perform her past work as a housekeeper or her work at the hospital. (Tr. 30.) Finally, at step five, the ALJ found that there are a significant number of other jobs in the national economy that Plaintiff can perform. (Tr. 31.) The ALJ thus concluded that Plaintiff was not disabled. (Tr. 32.)

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits may bring an action in federal district court seeking judicial review of the Commissioner's denial of benefits. 42 U.S.C. § 405(g); 42 U.S.C.

---

[9] The Act's regulations define "sedentary work" as work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 416.967(a). The regulations further note that a sedentary job "is defined as one which involves sitting," but also requires "a certain amount of walking and standing . . . in carrying out job duties." *Id.*

§ 1383(c).  In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera*, 697 F.3d at 151.  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (*per curiam*) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal quotation marks and brackets omitted).  In determining whether the Commissioner's findings are based on substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."  *Id.*  However, "it is up to the agency, and not this court, to weigh the conflicting evidence in the record."  *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).  If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld.  42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 175–76 (2d Cir. 2013) (*per curiam*).

## DISCUSSION

Plaintiff contends that the ALJ's decision is not supported by substantial evidence and that the ALJ failed to apply the relevant legal standards.  (Plaintiff's Motion for Judgment on the Pleadings ("Pl. Mot."), Dkt. 11-1, at 8.)  As discussed below, the Court grants Plaintiff's motion and remands to the SSA because the ALJ failed to adequately develop the record, and arrived at an RFC that was not supported by substantial evidence.  *See Fontanez v. Colvin*, No. 16-CV-1300 (PKC), 2017 WL 4334127, at *15–27 (E.D.N.Y. Sept. 28, 2017) (remanding after the court determined that the record had not been fully developed and that the RFC was not supported by substantial evidence).

## I.     The ALJ Failed to Adequately Develop the Administrative Record

### A.  The ALJ's Duty to Develop the Record

Although Plaintiff did not expressly challenge the sufficiency of the record, the Court must independently consider whether the ALJ satisfied her duty to develop the record.  *Sanchez v. Saul*, No. 18-CV-12102 (PGG) (DF), 2020 WL 2951884, at *23 (S.D.N.Y. Jan. 23, 2020) ("As a threshold matter, and regardless of the fact that Plaintiff did not raise an express challenge to the adequacy of the Record, this Court must independently consider the question of whether the ALJ failed to satisfy his duty to develop the Record."), *report and recommendation adopted*, 2020 WL 1330215 (S.D.N.Y. Mar. 23, 2020).    "[B]ecause a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (citations omitted).

As part of that obligation to develop the record, an ALJ must attempt to obtain medical opinions—not just medical records—from a claimant's treating physicians.  *Prieto v. Comm'r of Soc. Sec.*, No. 20-CV-3941 (RWL), 2021 WL 3475625, at *10–11 (S.D.N.Y. Aug. 6, 2021).  That obligation continues to exist even in cases involving claims filed after March 27, 2017, to which the "treating physician rule" no longer applies.[10]  *See id.*, at *8, 10–11; *see also* 20 C.F.R. §§ 404.1527, 404.1520c; *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844, 5875 (Jan. 18, 2017).  "[E]ven where, as here, the claimant is represented by counsel," the ALJ's obligation to adequately develop the record applies. *Merriman v. Comm'r of Soc. Sec.*, No. 14-CV-3510 (PGG), 2015 WL 5472934, at *18 (quoting

---

[10] For claims filed before March 27, 2017, the "treating physician rule" presumptively entitled treating physicians' opinions to controlling weight. *See Prieto*, 2021 WL 3475626, at *8. However, this rule does not apply to claims filed after March 27, 2017.  20 C.F.R. §404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s).").

*Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)). "Legal errors regarding the duty to develop the record warrant remand." *Wilson v. Colvin*, 107 F. Supp. 3d 387, 407 (S.D.N.Y. 2015) (collecting cases).

### B.   The ALJ Failed to Request Medical Opinions from Plaintiff's Treating Physicians

Here, the ALJ should have, but did not, request the opinions of Plaintiff's treating sources. Indeed, the record does not indicate that the ALJ even attempted to obtain their medical opinions. The ALJ's failure to seek medical opinions from Plaintiff's multiple treating physicians is particularly troubling with regard to Plaintiff's alleged back pain and how her symptoms impacted her ability to sit for long periods.  At the hearing before the ALJ, Plaintiff identified the "severe pain" in her back as the main reasons she had to leave her previous job, and also testified that she could not take a job that required alternating every 15 minutes between sitting and standing because of "pain, severe pain, in [her] back."  (Tr. 92, 93.)  Moreover, treatment notes from Dr. Vlattas from July 2018, September 2018, and November 2019 document that Plaintiff had difficulty with "prolonged sitting."  (Tr. 41, 43, 52.)  The ALJ herself noted that Plaintiff's treating physicians had found that Plaintiff's "pain of the neck, shoulder and lower back [was] worse with sitting, bending and lifting."  (Tr. 27.)  Yet, the ALJ still found the opinions of Drs. Rosenthal, Ahmed, and Meisel—which either overlooked her ability to sit or concluded without much explanation that she could sit approximately "6 hours in an 8-hour workday"—to be "persuasive." (*See* Tr. 29; *see also* Tr. 120, 143, 536–42.)  Although an ALJ has "no affirmative duty to resolve all inconsistencies in the record," the ALJ is obligated to further develop the record where there are "obvious gaps," such as the gaps in the record about Plaintiff's pain level and her ability to sit for extended periods.  *Lebby v. Comm'r of Soc. Sec.*, No. 20-CV-4760 (PKC), 2022 WL 580983, at *4 (E.D.N.Y. Feb. 24, 2022) (citing *Rusin v. Berryhill*, 726 F. App'x 837, 840–41 (2d Cir. 2018)).

In the defense's motion papers, the Commissioner does not address the ALJ's failure to develop the record, but notes elsewhere that Plaintiff's counsel informed the ALJ on April 28, 2020 that Plaintiff's "file was complete." (Defendant's Motion for Judgment on the Pleadings ("Def. Mot."), Dkt. 15-1, at 14, 17.) However, where "it is apparent from the face of the record that the record lacks necessary information, the ALJ cannot be relieved of [the] affirmative obligation to develop the record by a statement of counsel." *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 346 (E.D.N.Y. 2010). In this case, it should have been apparent to the ALJ that the record was not complete as it relates to the issue of whether Plaintiff could sit for prolonged periods, given that "the concept of sedentary work contemplates substantial sitting." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).[11]

The ALJ also failed to adequately develop the record as to the use of opioids to mitigate Plaintiff's pain. In her decision, the ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effect of [Plaintiff's pain] are not entirely consistent with the medical evidence and other evidence in the record," and when assessing Plaintiff's subjective account of her level of pain, the ALJ referred repeatedly to the fact that Plaintiff was taking pain relief medication. (Tr. 29–30.) The ALJ recounted from Dr. Vlattas's treatment notes from

---

[11] With respect to the silence in Dr. Meisel's opinion about Plaintiff's ability to sit for extended periods, the Commissioner argues that the Second Circuit's decision in *Dumas v. Schweiker*, 712 F.3d 1545 (2d Cir. 1983), allows the Commissioner and ALJ to "rely not only on what the records says, but also on what it does not say." (Def. Mot., Dkt. 15-1, at 13.) However, *Dumas* is inapposite because there the Second Circuit held that a finding of not being disabled was well supported where there was no indication of the severity of a claimant's pain in a record that "reflects a complete and detailed recitation of medical records and reports spanning" six years. 712 F.2d at 1553. Here, the missing information is not evidence to substantiate a claimant's subjective assessment of his or her pain, but rather the consultative expert's assessment of Plaintiff's residual functional capacity. Courts have consistently held that ALJs may not make an RFC determination in the absence of such supporting expert medical opinion. *See Weiss v. Comm'r of Soc. Sec.*, No. 19-CV-5916 (MKB), 2021 WL 2010503, at *12 (E.D.N.Y. Mar. 23, 2021) (collecting cases).

November 2019 that "Percocet took [Plaintiff's] level of pain from an 8 to 1," but the ALJ overlooked Dr. Vlattas's documented impression in that same set of treatment notes that Plaintiff may be dealing with "Chronic opioid use" and that Dr. Vlattas discussed with Plaintiff the possibility of "changing her to a long-acting" or long-release opioid medication.  (Tr. 30, 52.)  In addition to these indications in November 2019 that Dr. Vlattas may have been concerned about the long-term effects of the pain medication Plaintiff was being prescribed, the record is replete with regular warnings Plaintiff received from Dr. Vlattas about "continu[ing] with Percocet only as needed" and explaining the "long-term use and side effects" of Percocet.  (Tr. 42, 46, 48, 50, 52.)  In fact, treatment notes from her orthopedic hand specialist from January 2020 indicate that Plaintiff "ha[d] been taking her husband's oxycodone" for her severe elbow pain.  (Tr. 561.)

In light of these indications from Plaintiff's treatment records that Plaintiff's pain medication regimen might have needed to be adjusted downward, the ALJ should have solicited an opinion from the treating physicians about whether it would be feasible for Plaintiff to continue mitigating her pain from a level 8 to a level 1 by taking Percocet and other pain relief medications. *See Knox v. Astrue*, No. 10-CV-38 (SLT), 2012 WL 1117849, at *17 (E.D.N.Y. Mar. 30, 2012) (noting that ALJ erred in part in failing to address the implications of strong medication taken by claimant); *see also Reynoso v. Colvin*, No. 13-CV-5587 (HBP), 2015 WL 1378902, at *19 (S.D.N.Y. Mar. 26. 2015) (finding that the ALJ failed to consider how "prescription of Percocet" actually "lends credibility to plaintiff's contentions that [plaintiff] was in significant pain").

By not obtaining the opinions of Plaintiff's treating physicians about Plaintiff's ability to sit for sufficiently long periods to engage in sedentary work and about the long-term effects of Plaintiff's pain relief usage, the ALJ failed to adequately develop the record, and her decision must be remanded on that basis alone.  *See Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir. 1999) (remanding

for failure to develop the record because the ALJ did not obtain 'adequate information from [claimant's] treating physician"); *Commisso v. Comm'r of Soc. Sec.*, No. 20-CV-4872 (PKC), 2022 WL 742871, at *7 (E.D.N.Y. Mar. 11, 2022) (same); *see also Prieto*, 2021 WL 3475625, at *11 (recognizing this duty outside of the "treating physician rule" context).  On remand, the ALJ should, at a minimum, obtain the opinions of Plaintiff's treating physicians regarding her abilities and physical restrictions, especially as they relate to her lower back pain and whether it was feasible for her to continue taking Percocet and other pain relief medications.

## II.    The ALJ's RFC Finding Is Not Supported by Substantial Evidence

While a failure to develop the record is sufficient to remand, the Court further finds that the ALJ's RFC finding is not supported by substantial evidence.  An ALJ's RFC determination must be supported by substantial evidence, that is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian*, 708 F.3d at 417 (quoting *Richardson*, 402 U.S. at 401 (internal quotation marks and brackets omitted)); *see also Talavera*, 697 F.3d at 151.  Medical records alone cannot provide substantial evidence for an RFC determination; an "ALJ's RFC determination must be supported by a medical opinion in the record at that time." *Pearson v. Comm'r of Soc. Sec.*, No. 20-CV-3030 (AMD), 2021 WL 3373132, at *4 (E.D.N.Y. Aug. 3, 2021).  In determining whether the Commissioner's findings were based on substantial evidence, the Court must ascertain that the agency considered all evidence in reaching its findings. 20 C.F.R. § 404.1520(a)(3).  Moreover, the Court "is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian*, 708 F.3d at 417.  Still, "it is up to the agency, and not this court, to weigh the conflicting evidence in the record," *Clark*, 143 F.3d at 118, and if there is substantial evidence in the record

to support the Commissioner's findings as to any fact, they are conclusive and must be upheld.  42 U.S.C. § 405(g); *see also Cichocki*, 729 F.3d at 175–76.

The Act's regulations also require an ALJ to explain "how [she] considered the supportability and consistency factors for a medical source's medical opinions" in making a determination of disability.  20 C.F.R. § 404.1520c(b)(2).  With respect to supportability, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1).  Similarly, as to consistency, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).  Although ALJs are no longer directed to afford controlling weight to treating source opinions, the regulations still recognize the "foundational nature" of the observations of treating sources, and "consistency with those observations is a factor in determining the value of any [treating source's] opinion." *Acheampong v. Comm'r of Soc. Sec.*, 564 F. Supp. 3d 261, 267 (E.D.N.Y. 2021) (collecting cases).

Here, the ALJ relied on the medical opinions of Dr. Meisel, the one-time consultative examiner, and Drs. Rosenthal and Ahmed, the State Agency record analysts.  (Tr. 19.)  As explained further below, the ALJ found "persuasive" Dr. Meisel's opinion that Plaintiff had "marked limitations" for heavy lifting and carrying, climbing ladders and scaffolds, and being exposed to unprotected heights and mild limitations for standing, walking, climbing stairs, bending, and kneeling.  (Tr. 540.)  Notably, as discussed, Dr. Meisel did not provide an opinion as

to Plaintiff's ability to sit for extended periods.  The State Agency analysts, neither of whom examined Plaintiff, found that she was capable of light work with exertional and postural limitations and limitations in pushing and pulling in both of her lower extremities.  (Tr. 120–21, 153.)  The ALJ also found the analysts' opinions "persuasive," other than with respect to Plaintiff's standing and walking abilities.  (Tr. 29.)  The analysts did opine that Plaintiff could sit for approximately "6 hours in an 8-hour workday."  (Tr. 120, 143.)  For the reasons explained below, the opinions of Drs. Meisel, Rosenthal, and Ahmed do not constitute substantial evidence and the ALJ's reliance on them in determining Plaintiff's RFC was error.

### A.  The Consultative Examiner Did Not Have The Necessary Background Information

The Act's regulations require the Commissioner to "give the [consultative] examiner any necessary background information about [the plaintiff's] condition."  20 C.F.R. § 404.1517.  In this case, it is unclear from the record whether Dr. Meisel had access to Plaintiff's extensive treatment notes.  Dr. Meisel's consultative examination report states that Plaintiff had an MRI of her lumbar spine six months after her lateral lumbar fusion surgery in 2016, but notes that Plaintiff "[did] not know the results."  (Tr. 537.)  Dr. Meisel's report does not summarize the results of either that MRI or other MRIs in the record, which indicated ongoing issues in Plaintiff's spine and back.  (Tr. 54.)  The absence of any information from the MRIs in his report strongly suggests that Dr. Meisel did not have access to Plaintiff's relevant medical records, within which the MRI results would presumably have been included (as some are in the present record), or that he did not consider them even if he had access to them.

The absence of any discussion or consideration of Plaintiff's MRIs is significant because "where a consultative examiner did not review important medical records, the consultative examiner's opinion cannot constitute . . . substantial evidence to support an RFC."  *Benitez v.*

16

*Comm'r of Soc. Sec.*, No. 20-CV-5026 (RWL), 2021 WL 4239244, at *15 (E.D.N.Y. Sept. 17, 2021); *see also Skartados v. Comm'r of Soc. Sec.*, No. 20-CV-3909 (PKC), 2022 WL 409701, at *9 (Feb. 10, 2022) ("The ALJ's . . . [decision to] rely[] 'heavily' on the opinion of a one-time consultative examiner who had no access to Plaintiff's relevant medical records, was error.") Notwithstanding this glaring absence in Dr. Meisel's opinion, the ALJ determined that Dr. Meisel's opinion was persuasive because Dr. Meisel "took a history and performed a detailed clinical examination," leading the ALJ to summarily conclude that Dr. Meisel's opinion was "consistent with and supported by the overall record as well as the examination results." (Tr. 29.) Moreover, the ALJ's analysis of Dr. Meisel's opinion fails to explain the supportability and consistency factors that led the ALJ to determine that Dr. Meisel's opinion was persuasive, and fails to "eschew[] rote analysis and conclusory explanations"—which prevents the Court from "decid[ing] whether the determination is supported by substantial evidence." *Vellone v. Saul*, No. 20-CV-261 (RA) (KHP), 2021 WL 319354, at *4 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted*, 2021 WL 2801138 (S.D.N.Y. July 6, 2021); *see also Acheampong*, 564 F. Supp. 3d at 268 (remanding due to ALJ's failure to explain considerations of supportability and consistency factors in finding an opinion unpersuasive).

Accordingly, because the record suggests that Dr. Meisel did not review Plaintiff's treatment notes, and the ALJ failed to articulate the supportability and consistency factors with respect to Dr. Meisel's conclusions, the Court finds that Dr. Meisel's assessment of Plaintiff cannot provide the substantial evidence necessary to support the ALJ's determination.

### B.  The ALJ Failed to Properly Determine Plaintiff's Residual Functional Capacity

The ALJ's decision was also erroneous because it did not make "a function-by-function assessment of [Plaintiff's] ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch, based on medical reports from acceptable medical sources that include the sources'

opinions as to the claimant's ability to perform each activity." *Knight v. Comm'r of Soc. Sec.*, No. 18-CV-2474 (KAM), 2020 WL 3085778, at *7 (E.D.N.Y. June 10, 2020) (brackets omitted).  The ALJ is required to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis," and only after the ALJ has done so "may [the] RFC be expressed in terms of exertional levels of work, sedentary, light, etc." *Hilsdorf*, 724 F. Supp. 2d at 348–49 (citing Social Security Ruling 96-8p, 1996 WL 374184, at *1 (July 2, 1996)).

Here, the ALJ determined that Plaintiff could engage in sedentary work without first analyzing the Plaintiff's function-by-function limitations.  To the extent that the ALJ engaged in a function-by-function analysis at all, the ALJ found that Plaintiff had greater physical limitations in standing and walking than had been determined by Drs. Rosenthal and Ahmed.  (Tr. 29.)  But nowhere in the ALJ's decision does she assess Plaintiff's ability to sit for prolonged periods.  (*See generally* Tr. 23–32.)  The lack of analysis on Plaintiff's ability to sit is particularly troubling because, as explained earlier, the defining feature of "sedentary work" is that it "involves sitting." 20 C.F.R. § 416.967(a); *see also Ferraris*, 728 F.2d at 587 (remanding because "the concept of sedentary work contemplates substantial sitting" and the ALJ did not make "specific findings of exactly what [the claimant] can do, especially with reference to his ability to sit and for how long").  Because the ALJ did not make specific findings as to how long Plaintiff could sit before determining that Plaintiff could engage in sedentary work, remand is appropriate.

### C.  The ALJ Cherrypicked Medical Evidence and Relied on Stale Opinions

The ALJ also erred in disregarding the fact that both Dr. Meisel's opinion and those of the State Agency analysts did not account for Plaintiff's deteriorating condition.  *See Rodriguez v. Comm'r of Soc. Sec.*, No. 20-CV-3687 (VSB) (RWL), 2021 WL 4200872, at *18 (S.D.N.Y. Aug. 19, 2021) (remanding where the medical opinions of record were stale and did not account for

Plaintiff's reported worsening of her conditions).  Dr. Meisel's examination of Plaintiff occurred on March 13, 2019, and as discussed above, Dr. Meisel likely did not have access to Plaintiff's MRI records to incorporate into his findings.  Dr. Rosenthal's report was issued on March 28, 2019, and Dr. Ahmed's reconsideration decision was issued on July 11, 2019.  (Tr. 119, 122–23, 153–55.)

The ALJ's decision dated June 1, 2020, relied on evidence that was between 15 and 11 months old.  While age of an opinion alone is not determinative of its staleness, *Biro v. Comm'r of Soc. Sec.*, 335 F. Supp.3d 464, 470 (W.D.N.Y. 2018), there was evidence in the record that Plaintiff's condition worsened in the period between when Drs. Meisel, Rosenthal, and Ahmed issued their opinions and the ALJ's decision.  Specifically, between April 2019 and November 2019, Plaintiff reported to Dr. Vlattas worsening neck pain, lower back pain, and numbness and tingling of her hands.  (Tr. 547, 549–551.)  In that period, Dr. Vlattas repeatedly found "spasm and tenderness" of Plaintiff's lumbar and cervical spine and trigger points in the shoulder girdle region, and frequently encouraged Plaintiff to be seen by her spine surgeon.  (Tr. 547, 549–551.)

The deterioration reflected in Dr. Vlattas's notes is further supported by Plaintiff's own testimony at the hearing, which indicated a substantial deterioration in her daily functioning from the time of her examination by Dr. Meisel.  (Def. Mot., Dkt. 15-1, at 13; Tr. 103–05.)  For example, Dr. Meisel noted in his report dated March 3, 2019 that Plaintiff had driven herself to the appointment, that she did some cooking, and was able to shower and dress herself.  (Tr. 537.)  Yet, by the time of the hearing in January 28, 2020, Plaintiff was relying on friends and family for rides, and sometimes had difficulty bathing and dressing due to her pain.  (Tr. 99–101.)  Given the contradicting evidence in the record, it was impermissible for the ALJ to credit or rely on Dr. Meisel's opinion as current or relevant, and the ALJ's decision must therefore be remanded for

19

consideration of Plaintiff's current condition.  *See Jones v. Comm'r of Soc. Sec.*, No. 10-CV-5831 (RJD), 2012 WL 3637450, at *2 (E.D.N.Y. Aug. 22, 2012) (finding that an opinion that was 1.5 years old and did not account for Plaintiff's deteriorating condition was stale).

Finally, despite ample evidence in the record suggesting that Plaintiff's back pain increased when she sat for prolonged periods, the ALJ summarily dismissed those concerns by noting that Plaintiff "reported improvement post surgery."  (Tr. 30.)  But by the ALJ's own recounting of factual findings, Plaintiff reported to Dr. Verma that after the neck surgery in 2017, her "hand weakness had resolved," but her "lower back pain was worse."  (Tr. 27.)  The ALJ's reliance on the reported improvement in Plaintiff's motor function with respect to her hand, while ignoring the reported worsening back pain, constituted impermissible "cherry-picking" of the medical evidence to support the ALJ's conclusion.  *Jones v. Saul*, No. 19-CV-5542 (BM), 2020 WL 5775525, at *12 (S.D.N.Y. Sept. 11, 2020) (remanding in part because an "ALJ may not 'cherry-pick' medical opinions, or selectively cite treating notes or diagnostic imaging that support the ALJ's own view while ignoring opinions and evidence that do not"), *report and recommendation adopted*, 2020 WL 5775195 (Sept. 28, 2020).

## CONCLUSION

For the reasons set forth herein, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion.[12]  The Commissioner's decision is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with

---

[12] Because the Court has found that the ALJ failed to adequately develop the record and that her RFC finding is not supported by substantial evidence, the Court need not address Plaintiff's argument that remand is warranted in light of the additional evidence she submitted to the Appeals Council.

this Memorandum & Order.  The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

/s/ Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated:  September 23, 2022
        Brooklyn, New York

21